IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | CRIMINAL NO. 01:06-CR-0102 |
| | : | |
| v. | : | (Judge Conner) |
| | : | |
| **LUCIO ARMANDO CARAVAJAL-VIVANCO** | : | |
| | : | |

## **MEMORANDUM**

Presently before the court is a motion (Doc. 39), filed by defendant Lucio Armando Caravajal-Vivanco ("Caravajal-Vivanco"), to dismiss the indictment in this case, charging him with unlawful transportation of illegal aliens, in violation of 8 U.S.C. § 1324(a)(1)(A)(ii).

Documents of record reflect that, on March 5, 2006, Pennsylvania State Police stopped a 1997 Chevrolet pick-up truck heading eastbound on the Pennsylvania Turnpike for speeding. (Doc. 43, Ex. A.) Caravajal-Vivanco was the driver of that vehicle. (Doc. 43, Ex. A.) The officer effectuating the stop noticed eight individuals lying in the bed of the covered truck, and six other individuals in the cab of the truck. (Doc. 43, Ex. A.) None of the vehicle's occupants spoke English. (Doc. 43, Ex. A.) Agents from the Department of Homeland Security, Bureau of Immigration and Customs Enforcement ("BICE") arrived shortly thereafter and took all fifteen individuals into custody. (Doc. 43, Ex. A.) The pick-up truck was towed to a storage facility until its owner could make arrangements to retrieve it. (Doc. 43, Ex. A.)

It was subsequently determined that all fifteen individuals were citizens and nationals of Mexico, present in the United States without permission.  (Doc. 43, Ex. B.)  One of the passengers was a minor traveling without any family, and was placed in a juvenile facility.  (Doc. 43, Ex. B.)  Three other passengers were released on their own recognizance, and the rest were placed into York County Prison pending immigration hearings.  (Doc. 43, Ex. B.)  Two of the passengers, Luis Carlos Victoria-Pascacio ("Victoria-Pascacio") and Gumaro Flores-Nava ("Flores-Nava") were held as material witnesses.  (Doc. 43, Ex. B.)

Victoria-Pascacio and Flores-Nava are expected to testify that, on March 1, 2006, they illegally entered the United States from Mexico, stopping at a house in Phoenix, Arizona for the night.  Thereafter, they were transported in the vehicle driven by defendant, which vehicle was stopped by the Pennsylvania State Police on March 5, 2006.  (See Doc. 38 at Exs. 2, 3.)

On March 15, 2005, the government filed a one-count indictment against Caravajal-Vivanco, charging him with transporting illegal aliens in violation of 8 U.S.C. § 1324(a)(1)(A)(ii).  Specifically, the indictment alleges that the defendant "did knowingly and in reckless disregard of the fact that fourteen illegal aliens, had come into, entered, and remained in the United States in violation of law, did transport and move said aliens within the United States by means of transportation, namely a motor vehicle, in furtherance of such violation of law."  That same day, counsel for Caravajal-Vivanco was notified that, with the exception of Victoria-Pascacio and Flores-Nava, all of the other passengers were either released on their

own recognizance, transferred out-of-state, or deported. (Doc. 38, Ex. 1.) Counsel later determined that the vehicle in which the aliens were traveling had been released on the date of its seizure, March 5, 2006. (Doc. 38 ¶ 9.)

Caravajal-Vivanco subsequently filed the instant motion to dismiss the indictment. The motion argues that the deportation of eight passengers, and the release of three other passengers and the truck deprived him of his Sixth Amendment right to have compulsory process for obtaining witnesses in his favor, and his Fifth Amendment right to due process of law. It states that the passengers in the vehicle "could support [the] position that there were other drivers and that someone else was in charge of the trip." (Doc. 39 at 10.) The motion also argues that the passengers' testimony could have had a positive effect on guidelines calculations at sentencing. (Doc. 39 at 10.)

Both the Due Process Clause and the Sixth Amendment guarantee a criminal defendant's right to present his or her defense. See United States v. Ismaili, 828 F.2d 153, 171 n.4 (3d Cir. 1987). The former guarantees that a criminal defendant will be treated with fairness, and requires that the government not deviate from "fundamental conceptions of justice." See United States v. Lovasco, 431 U.S. 783, 790 (1977). The latter guarantees a defendant the right to "offer testimony of favorable witnesses, and to compulsory process for obtaining witnesses in his favor." United States v. Cruz-Jiminez, 977 F.2d 95, 100 (3d Cir. 1992); see U.S. CONST. amend. VI. It also protects the presentation of the defendant's case from unwarranted governmental interference. See Gov't of Virgin Isles. v. Mills, 956 F.2d

443, 445 (3d Cir. 1992). Both the Due Process Clause and the Sixth Amendment require an actual injury for their violation. Accordingly, a defendant challenging the deportation of a potential witness must demonstrate that the witness's testimony would have been both material and favorable to the defense. See United States v. Valenzuela-Bernal, 458 U.S. 858, 873 (1982); Cruz-Jiminez, 977 F.2d at 100. Evidence is material "only if there is a reasonable likelihood that the testimony could have affected the judgment of the trier of fact." Id.

In the instant case, Caravajal-Vivanco is charged with the unlawful transportation of illegal aliens. To sustain a conviction, the government must prove beyond a reasonable doubt that: (1) the defendant transported or attempted to transport an alien within the United States, (2) the alien was in the United States illegally, (3) the defendant knew of or recklessly disregarded the fact that the alien was in the United States illegally, and (4) the defendant acted willfully in furtherance of the alien's violation of the law. See United States v. Vega, No. 05-2389, 2006 WL 1674155, at *6 (3d Cir. June 19, 2006) (citing United States v. Barajas-Chavez, 162 F.3d 1285, 1288 (10th Cir. 1999)); see also 8 U.S.C. § 1324(a)(1)(A)(ii).

Although not yet addressed by the Third Circuit, various tests have been adopted for determining whether a defendant's intent was "in furtherance of" the alien's violation of law. See, e.g., Baravas-Chavez, 162 F.3d at 1287-89. The gravamen of these tests looks to the facts and circumstances surrounding the allegedly unlawful conduct, including the time, place, distance, and reason for the travel, the overall impact of the journey, the defendant's role in organizing the trip

or assisting in the execution of the trip, whether the defendant was compensated for his or her role, and whether the defendant attempted to conceal any of the aliens.  See id.

In the instant matter, Caravajal-Vivanco asserts that the passengers in the pick-up would have testified that others also drove the vehicle, that he was not in charge of the trip, that he made no effort to conceal anyone, and that he was merely one of the passengers traveling from Phoenix to the east coast for work.  (See Doc. 39 at 9.)  He also asserts that the other passengers could have testified that he did not drive in a reckless or unsafe manner, and that he did not accept payment for driving, thereby mitigating any sentencing enhancements that might apply.  (See Doc. 39 at 10.)

Upon review of the deposition transcripts of Victoria-Pascacio and Flores-Nava, it appears that their testimony at trial will largely be consistent with Caravajal-Vivanco's assertions.[1]  See Valenzuela-Bernal, 458 U.S. 858, 873-74 (1982) (noting that sanctions are warranted against the government for deporting an alien witness only when the testimony is "not merely cumulative . . . . [but] could have affected the judgment of the trier of fact"); see also Cruz-Jiminez, 977 F.2d at 100 ("Mere showing by accused that some relevant evidence was excluded is insufficient; the accused must demonstrate that the testimony would have been

---

[1] The notable exception is the extent to which the defendant drove.  The witnesses' testimony appears to reflect that defendant drove the entire trip, while defendant asserts that he shared the driving responsibilities with other passengers.

both material and favorable to his defense."). However, out of an abundance of caution the court will reserve ruling on the instant motion until after the parties have introduced their evidence at trial. See Valenzuela-Bernal, 458 U.S. at 874 ("Because determinations of materiality are often best made in light of all of the evidence adduced at trial, judges may wish to defer ruling on motions until after the presentation of evidence."); see also id. at 874 n.10.

An appropriate order will issue.

 S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge

Date: August 1, 2006

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 01:06-CR-0102** |
| | : | |
| v. | : | **(Judge Conner)** |
| | : | |
| **LUCIO ARMANDO CARAVAJAL-VIVANCO**, | : | |
| | : | |

## **ORDER**

AND NOW, this 1st day of August, 2006, upon consideration of defendant's motion (Doc. 39) to dismiss the indictment, and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

1. A ruling on the motion (Doc. 39) to dismiss the indictment is DEFERRED until after the parties have introduced their evidence at trial.

2. The parties shall, on or before August 8, 2006, file with the court proposed *voir dire* and proposed jury instructions.

                                            S/ Christopher C. Conner  
                                            CHRISTOPHER C. CONNER  
                                            United States District Judge